UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENZEL A. SIMMONS,

    Plaintiff,

v.

C. McCUMBER-HEMRY,
CHADWELL, and SCOTT
McLAIN,

    Defendants.
_____/

Case No. 2:18-cv-11040
District Judge Arthur J. Tarnow
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION ON DEFENDANT McLAIN'S MOTION FOR SUMMARY JUDGMENT (ECF No. 28)[1]

### I.   Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. In March of 2018, plaintiff Denzel A. Simmons, proceeding *pro se* and *in forma pauperis*, filed a complaint naming Shawn Brewer, A. Stewart, K. Lindsey, J. Howard, C. McCumber-Hemry, S. Stewart, Chadwell, King, McDavit, K. Francies, Howard, and Scott McLain[2] as defendants. On July 20, 2018, the Court *sua sponte*

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] Scott McLain was originally identified by Simmons as "McClaim." *See* ECF No. 1.

dismissed several defendants and directed that the United States Marshal serve the complaint on the remaining defendants: McCumber-Hemry, Chadwell, and McLain. *See* ECF No. 6. To date, only McLain has been served and has answered the complaint. *See* ECF No. 20.[3]

Before the Court is McLain's motion for summary judgment. (ECF No. 28). Simmons responded, McLain replied, and Simmons filed both an addendum and a sur-reply. (ECF Nos. 37, 38, 39, 41). As such, the motion is ready for consideration.[4] For the reasons that follow, the undersigned RECOMMENDS that McLain's motion for summary judgment be GRANTED.

II. Background

In the amended complaint,[5] Simmons says he was having a peaceful protest in a "cage" from April 10, 2017 through April 11, 2017. (ECF No. 8, PageID.32).

---

[3] The undersigned previously filed a Report and Recommendation (R&R), recommending that McCumber-Hemry and Chadwell be dismissed without prejudice. (ECF No. 25). Simmons filed objections, which remain pending. (ECF No. 26).

[4] Judge Tarnow entered an order provisionally appointing Simmons counsel and staying the case "for 90 days or until pro bono counsel is appointed, whichever comes first." (ECF No. 42, PageID.271). On January 3, 2022, Judge Tarnow entered an order lifting the stay, noting that 90 days had passed and no attorney from the pro bono panel has volunteered to take Simmons' case. (ECF No. 45). Accordingly, Simmons is continuing to proceed *pro se*.

[5] ECF No. 8 is a motion to amend to complaint to which a proposed amended complaint was attached. Because McLain's arguments are directed at the amended complaint, the undersigned considers the amended complaint attached to ECF No. 8 to be the governing complaint.

On April 11, 2017, McLain "severely pepper sprayed" Simmons twice causing him to black out and hit his head two times. (*Id*.). McLain also "graded" Simmons' "but [sic] and rubed [sic] his finger between [his] but [sic] cheeks, sexually assaulting [him]." (*Id*.). Simmons alleges that McLain's actions violated his Eighth Amendment right to be free of cruel and unusual punishment and also "constituted the tort of sexually assult [sic], [f]elonious assault, and assault and battery under the law of Michigan." (*Id*., PageID.33).

McLain, however, says that on April 10, 2017, Simmons was issued a Class I misconduct report for threatening behavior on staff. (ECF 28-2, PageID.129; ECF No. 28-3, PageID.137-138). According to the misconduct report, Simmons returned from a ticket review, walked up to Corrections Officer Dowell's desk, and said, "[W]hat kind of fucking games are you trying to play." (*Id*., PageID.137). Dowell told Simmons to return to his cell. (*Id*.). While standing approximately three feet away from Dowell, Simmons responded, "This is fucking prison your [sic] playing with your fucking life." (*Id*.). Dowell "felt threatened" by Simmons and called McLain and the yard officers to escort Simmons off unit. (*Id*.).

Because of Simmons' behavior toward Dowell, Simmons was placed in the segregation unit holding cell so he could be strip searched and processed for segregation. (ECF 28-2, PageID.129). McLain says that Simmons refused to

3

comply with a strip search. (*Id.*). Lieutenant K. Muzzin spoke with Simmons several times in an attempt to get him to comply with the strip search. (*Id.*).

Deputy Warden Howard determined that Simmons could remain in the holding cell until he complied with the strip search. (*Id.*). This was because prison staff was concerned that Simmons could have a weapon. (*Id.*). Prison staff in both the second and third shift attempted to get Simmons to comply with the strip search, but Simmons refused to do so. (*Id*).

A new misconduct report was written documenting Simmons' refusal to comply while in the holding cell. (ECF No. 28-3, PageID.144). The report indicates that there was a video recording of the incident. (*Id.*).

On April 11, 2017, after Simmons had been in the holding cell for a day, Warden Brewer authorized the use of a chemical agent on Simmons and Health Unit Manager Howard medically cleared Simmons for the use of a chemical agent in order to assist in removing Simmons from the holding cell. (ECF 28-2, PageID.129).

At 9:00 a.m. on April 11, 2017, after Simmons continued to refuse to comply with the strip search. (*Id.*, PageID.129-130). A cell extraction team consisting of McLain (squad leader), A. Melvin (shield), D. Fuller (hand restraints), S. Marry (hand restraints), R. Blair (leg restraints), and T. Roark (camera) was assembled. (*Id.*). McLain verbally commanded Simmons several

4

times to back up and be placed in wrist restraints. (*Id*., PageID.130). Simmons refused to comply. (*Id*.). McLain then administered the chemical agent through the food slot of the holding cell. (*Id*.). McLain then continued to verbally command Simmons to back up to the food slot and be restrained. (*Id*.). This lasted approximately five minutes. (*Id*.). McLain then attempted to administer a second application of the chemical agent, but Simmons placed his coat against the food slot blocking access. (*Id*.). Marry and Fuller removed the coat thereby allowing McLain to administer a second application of the chemical agent through the food slot. (*Id*.). Approximately one minute later, Simmons complied with McLain's order to be restrained. (*Id*.).

Fuller applied wrist restraints while Blair applied leg restraints. (*Id*.). The team removed Simmons from the holding cell and escorted him to the shower. (*Id*.). McLain then removed Simmons' clothing. (*Id*.). Simmons remained in the shower for approximately five minutes in order to rinse the chemical agent off his body. (*Id*., PageID.130-131).

Simmons was then escorted to temporary segregation unit cell six where Health Unit Manager Howard performed a medical evaluation on Simmons. (*Id*., PageID.131). Health Unit Manager Howard noticed no injuries. (*Id*.; ECF No. 28-3, PageID.151).

5

McLain denies grabbing Simmons' buttocks or rubbing his finger between Simmons' buttocks. (ECF No. 28-3, PageID.131). He also denies witnessing anyone doing so. (*Id.*). Simmons' claim was investigated, and the investigation was closed because of insufficient evidence. (*Id.*).

McLain wrote two Class II misconduct reports regarding the incident.[6] In the first he charged Simmons with Disobeying a Direct Order by refusing to leave the holding cell and be placed in restraints and in the second charged him with Disobeying a Direct Order by refusing several direct orders and causing the use of a chemical agent against him. (*Id.*, PageID.144-145, 148-149). He attached video evidence to the second report. (*Id.*, PageID.148).

On April 12, 2017, Simmons completed a Prison Rape Elimination Act (PREA) Prisoner Grievance Form alleging that someone grabbed his butt and rubbed his finger between his butt cheeks. (*Id.*, PageID.156-157). Simmons did not name the assailant, but did indicate a corrections officer had previously threatened to sexually assault him. (*Id.*). In medical records from April 12, 2017, Simmons repeated the allegations, again without naming an assailant, and denied any rectal penetration. (ECF No. 28-4, PageID.164).

---

[6] It also appears that A. Orozco wrote a misconduct report stemming from Simmons' refusal to comply with the strip search for which Simmons was found guilty and sanctioned to 15 days loss of privileges. (ECF No. 28-3, PageID.147-148).

On April 13, 2017, a hearing officer found Simmons guilty on the Class II misconduct report that detailed the incident leading to the use of a chemical agent against him. (ECF No. 28-3, PageID.148-149). Simmons stated, "That did happen." (*Id*., PageID.149). The hearing officer imposed a sanction of 15 days loss of privileges. (*Id*.).

On April 19, 2017, a hearing officer found Simmons guilty on the Class I misconduct report that was issued on April 10, 2017, for threatening behavior toward staff. (*Id*., PageID.138). The hearing officer imposed a sanction of three days of detention. (*Id*.).

Also on April 19, 2017, a hearing officer found Simmons guilty on the Class II misconduct report for failing to comply with being placed in restraints. (*Id*., PageID.145). The hearing officer noted that none of the material facts were in dispute and that Simmons "entered a plea of guilty and stated 'I'm totally guilty of that.' " (*Id*., PageID.145). The hearing officer imposed a sanction of 20 days loss of privileges. (*Id*.).

On April 28, 2017, a Michigan Department of Corrections (MDOC) memorandum concerning Simmons' allegations of sexual assault was created. (ECF No. 28-3, PageID.152). Inspector Scott Bailey reviewed video of the alleged sexual assault and found "no evidence [that] Sergeant Mclain or any other employee grabbed prisoner Simmons butt cheek or rubbed his finger between his

7

buttocks." (*Id*., PageID.153). All involved employees also denied witnessing McLain, or anyone else, sexually assaulting Simmons. (*Id*.). McLain denied sexually assaulting Simmons or witnessing anybody sexually assault Simmons. (*Id*.).

### III. Legal Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

8

446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Simmons is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

IV. Analysis

A. Excessive Force

"[T]he Eighth Amendment . . . forbids the 'unnecessary and wanton infliction of pain' that constitutes 'cruel and unusual punishment,' and specifically conduct that is malicious and sadistic." *Coley v. Lucas County, Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5, 7 (1992)). But "[c]orrections officers do not violate a prisoner's Eighth Amendment rights when they apply force in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quotations omitted).

9

There is both an objective and subjective component to an Eighth Amendment claim. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). "To determine whether the subjective component is met, [the Court] consider[s] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." *Tuttle v. Carroll Cty. Detention Ctr.*, 500 F. App'x 480, 481 (6th Cir. 2012) (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). "In assessing the objective component, [the Court] conduct[s] a contextual inquiry to determine whether the pain inflicted was 'sufficiently serious.' " *Tuttle*, 500 F. App'x at 481 (citing *Williams*, 631 F.3d at 383). "The extent of a prisoner's injury may suggest whether the use of force could plausibly have been thought necessary in a particular situation and may also provide some indication of the amount of force applied." *Tuttle*, 500 F. App'x at 481 (*Wilkins v. Gaddy*, 559 U.S. 34 (2010)).

In this case, Simmons makes two separate Eighth Amendment claims. The first relates to McLain's use of a chemical agent against him. The second relates to McLain's alleged sexual assault of Simmons. Each claim will be addressed in turn below.

As to his first claim, it is undisputed that McLain used a chemical agent against Simmons while he was in the holding cell. On numerous occasions, the Sixth Circuit has considered the use of chemical agents against prisoners. When

10

the Sixth Circuit is faced with cases where officers used chemical agents against a prisoner for repeatedly disobeying orders it routinely finds no Eighth Amendment violation. *See, e.g., Jennings v. Mitchell*, 93 F. App'x. 723, 725 (6th Cir. 2004); *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases). However, "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, in *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011), the court held that a prisoner stated a valid excessive-force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him."

This case falls into the first category of cases where no Eighth Amendment violation occurred. McLain's affidavit along with the misconduct reports and Simmons' guilty pleas to those reports show that Simmons repeatedly disobeyed orders on April 10, 2017, and April 11, 2017. Prison officials tried for many hours to gain Simmons' compliance with a strip search before requesting approval from the prison's warden to use chemical agents. McLain ceased use of the chemical agents once Simmons verbally indicated that he would comply with being restrained and strip searched. There is no evidence that McLain used chemical agents in a malicious or sadistic manner to cause harm. All of the evidence demonstrates that he used the chemical agents in order to obtain Simmons'

11

compliance. Reasonable minds could not differ on whether the use of the chemical agent under the circumstances was reasonable. Thus, McLain is entitled to summary judgment on Simmons' Eighth Amendment claim relating to the use of chemical spray.

Simmons' second claim is that McLain sexually assaulted him during the cell extraction by grabbing his buttocks and rubbing a finger between his buttocks cheeks. While McLain makes much of the fact that Simmons' states in his amended complaint that he "believe[s]" McLain is the person who sexually assaulted him, after construing his *pro se* complaint liberally and considering his response to the instant motion, it is clear that Simmons is affirmatively claiming that McLain was the individual who assaulted him. McLain also argues that the allegation is too "subjective and vague" to constitute an Eighth Amendment violation relying on *Tuttle*.

In *Tuttle*, the Sixth Circuit concluded that the "district court properly dismissed Tuttle's complaint because he failed to allege facts demonstrating that Hensley acted maliciously or sadistically for the purpose of causing harm. Further, Tuttle did not allege that he suffered an injury that would support an inference that Hensley used an amount of force unnecessary for a pat-down search." *Tuttle*, 500 F. App'x at 482. This was because Tuttle's "bare-bones allegation that the female

12

deputy '*grabbed* my privates and *squeezed them really hard*' (emphasis added) is simply too subjective and vague to state an Eighth Amendment violation." *Id*.

This case is analogous to *Tuttle*. Simmons' bare-bones allegations that McLain grabbed his buttocks and rubbed his finger between his buttocks cheeks is simply too subjective and vague to state an Eighth Amendment claim. Further, Simmons did not allege that he suffered an injury that would support an inference that Simmons used an amount of force unnecessary for a cell extraction.

Moreover, even assuming Simmons' allegations in the amended complaint stated an Eighth Amendment claim, his Simmons allegations are blatantly contradicted by a holistic review of the record. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Gallant v. Erdos*, No. 1:19-cv-466, 2021 WL 4860601, at *11 (S.D. Ohio Oct. 18, 2021).

Here, Simmons' allegations of sexual assault were dismissed by a prison inspector for insufficient evidence after the inspector reviewed video evidence of the cell extraction and interviewed the involved parties. Simmons' only evidence that a sexual assault occurred are his own allegations. This is not enough in the face of the evidence submitted by McLain in support of his motion for summary

13

judgment. Thus, McLain is entitled to summary judgment on Simmons' Eighth Amendment claim relating to the alleged sexual assault.

### B. Qualified Immunity

McLain argues that he is entitled to qualified immunity because Simmons has failed to demonstrate that he violated any clearly established constitutional right. Section 1983 claims are subject to the affirmative defense of qualified immunity. *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014). "Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). "A plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified immunity defense." *Id*.

"At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *Id*. "A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013). "Ultimately, however, the burden of proof is on the plaintiff to show that the defendants are not entitled to qualified immunity." *Id.* (quotation marks and citation omitted). "[T]he plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,'

14

that is, 'evidence on which [a] jury could reasonably find for the plaintiff.' " *McDonald*, 814 F. App'x at 812 (quoting *Anderson*, 477 U.S. at 252, 256).

As explained above, Simmons has failed to show that McLain violated his Eighth Amendment rights in regard to the use of a chemical agent or the alleged sexual assault. Accordingly, Simmons failed to satisfy step one, namely that McLain violated a constitutional right. Because Simmons failed to show that McLain violated a constitutional right, McLain is entitled to qualified immunity.

C. Sovereign Immunity

Simmons sued McLain in both his unofficial and official capacities. McLain argues that he is entitled to Eleventh Amendment immunity on the official capacity claims. The undersigned agrees.

The Eleventh Amendment applies to a suit brought against a state by one of its own citizens. *Ex Parte Young*, 209 U.S. 123 (1908). The Eleventh Amendment describes the contours of sovereign immunity, providing that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This means that "[t]he Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages." *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009).

During the events at issue in this lawsuit, McLain was an MDOC employee. "Because the MDOC is a state agency and the state of Michigan has not consented to civil rights suits in the federal courts, the MDOC is entitled to Eleventh Amendment immunity." *Sims v. Mich. Dep't of Corr.*, 23 F. App'x 214, 215 (6th Cir. 2001). By extension, McLain as an MDOC employee is also entitled to Eleventh Amendment immunity for claims brought against him in his official capacity. *See Pearson v. Mich. Dep't of Corr.*, Nos. 19-10707 & 19-10771, 2020 WL 5291974, at *4 (E.D. Mich. Sept. 4, 2020) ("And, an official capacity defendant is absolutely immune from monetary damages."). Thus, Simmons' official capacity claims against McLain should be dismissed.

V. Conclusion

For the reasons stated above, the undersigned RECOMMENDS that McLain's motion for summary judgment be GRANTED.

Dated: January 7, 2022  s/Kimberly G. Altman
Detroit, Michigan  KIMBERLY G. ALTMAN
 United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 7, 2022.

<u>s/Carolyn Ciesla</u>
CAROLYN CIESLA
Case Manager

18